**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KAREN M. GEORGE-BAUNCHAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-3828 |
| | § | |
| WELLS FARGO HOME MORTGAGE, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a dispute over a foreclosure on a home mortgage and attempted eviction.  The

plaintiff and mortgagor, Karen M. George-Baunchand, sued in state court to enjoin eviction from

her home after the assignee and servicer of the note, Wells Fargo Home Mortgage, Inc. ("Wells

Fargo"), had foreclosed following Baunchand's default.  The property was sold at the foreclosure

sale to the Federal Home Loan Mortgage Corporation ("Freddie Mac").  The state-court lawsuit

named Wells Fargo and Freddie Mac as defendants.  After Wells Fargo removed the lawsuit to

federal court and after this court granted, with leave to amend, the defendants' motion to dismiss the

complaint, Baunchand filed a second amended complaint.[1]  The second amended complaint asserted

causes of action for breach of contract, promissory estoppel, fraud, and conversion.  The defendants

have filed a motion for summary judgment on the breach of contract and promissory estoppel claims

and a motion to dismiss the fraud and conversion claims under Federal Rule of Civil Procedure

---

[1] Baunchand filed a first amended complaint after the defendants moved to dismiss her original complaint, but before this court granted the motion to dismiss.  The second amended complaint replaced the first amended complaint.

12(b)(6).  (Docket Entry No. 26).  Baunchand responded, (Docket Entry No. 29), and the defendants replied, (Docket Entry No. 30).

Based on the pleadings; the motions, response, and reply; the record; and the relevant law, this court grants the motion for summary judgment and grants the motion to dismiss.  Baunchand may attempt to amend her complaint to state a viable fraud claim no later than **January 13, 2012**.

The reasons for these rulings are explained below.

## I.    Background

In August 2001, Baunchand obtained a $151,000 mortgage loan from Wells Fargo to purchase a home located in Katy, Texas.  She signed a 30-year fixed-rate note promising to repay the loan at 7.125% interest in monthly installments, (Docket Entry No. 26-1), and a deed of trust granting Wells Fargo a security interest in the home, (Docket Entry No. 26-2).  The fixed-rate note contained a no-oral-modification clause that stated as follows: "This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.  There are no unwritten oral agreements between the parties."  (Docket Entry No. 26-1, at 2).

Beginning in September 2006, Baunchand defaulted on her mortgage payments.  (Docket Entry No. 29-4, at 1).  Wells Fargo posted her home for foreclosure in October 2008.  (Docket Entry No. 29-3, at 2).  In December 2008, Baunchand and Wells Fargo entered into a forbearance agreement, which called for Baunchand to make three $1,545.86 monthly payments, followed by a $55,740.93 payment due by March 17, 2009.  (Docket Entry No. 29-4, at 2).  The agreement stated that if Baunchand made "all the . . . required payments as outlined below resulting in a full reinstatement," Wells Fargo would "instruct [its] foreclosure counsel to dismiss foreclosure

proceedings." (*Id.*, at 1).  But if she did not make the four required payments, Wells Fargo would "resume the foreclosure action immediately." (*Id.*).  Baunchand alleges that she paid $1,646.00 per month for five months.  (Second Am. Compl. ¶ 4.2).  There is no evidence in the record that Baunchand made the $55,740.93 final payment required to terminate foreclosure proceedings under the forbearance agreement by March 17, 2009.

On March 30, 2009, Wells Fargo sent Baunchand a letter informing her that she "may be eligible for payment relief" on her mortgage.  (Docket Entry No. 29-5).  The letter stated that Baunchand was "being considered for a loan modification, which is a change to the original terms of [the] mortgage contract," and that if she qualified, Wells Fargo would "suspend . . . foreclosure activity for thirty (30) days." (*Id.*).  The letter further stated that Baunchand had to call Wells Fargo by April 15, 2009, to provide information needed for Wells Fargo to begin evaluating whether she qualified for the loan modification.  (*Id.*).  Baunchand's handwritten notes on the March 2009 letter indicate that she called Wells Fargo on April 7 and talked to a Wells Fargo representative about loan modification.  (*Id.*).  On July 20, 2009, Wells Fargo sent Baunchand a follow-up letter.  The letter thanked her for her in interest in Wells Fargo's Borrower Counseling Program and listed "some of the options that may become available" to her once Baunchand submitted an enclosed application with supporting documentation.  (Docket Entry No. 29-7, at 1).  The listed options were a repayment plan, loan modification, short sale, and a deed in lieu of foreclosure.  (*Id.*).

On July 31, 2009, Baunchand submitted a written application for "a forbearance or loan modification" of her mortgage loan because she had "fallen behind in [her] payments." (Docket Entry No. 29-8, at 2).  Wells Fargo acknowledged receipt of her "request for assistance" in an August 2009 letter.  (Docket Entry No. 29-9, at 1).  The letter stated that Wells Fargo would keep

3

Baunchand informed "as [her] mortgage move[d] through the processing steps" and that she could "expect to receive a final decision . . . within the next 45-60 days." (*Id.*). The letter instructed the plaintiff to continue making her monthly mortgage payments "[u]ntil a decision is made" and asked her to "please . . . [u]nderstand that all normal . . . foreclosure . . . processes may continue uninterrupted during this time period." (*Id.*). Baunchand received an identical letter from Wells Fargo on September 28, 2009. (Docket Entry No. 29-11).

On October 3, 2009, Wells Fargo sent Baunchand a letter communicating "good news" about her mortgage loan. (Docket Entry No. 29-13, at 1). The letter stated that based on her telephone conversation with Wells Fargo and the financial information she provided, Wells Fargo would like to offer her a "Special Forbearance Agreement." (Docket Entry No. 29-13, at 1). This agreement was "not a waiver of the accrued or future payments, but a trial period showing you can make regular monthly payments." (*Id.*). The letter explained that "[u]pon successful completion of the Agreement," the mortgage loan "will not be contractually current" because "the installments may be less than the total amount due," but "[a]ny outstanding payments and fees will be reviewed for a loan modification." (*Id.*). The letter further stated that Wells Fargo "will instruct [its] foreclosure counsel to suspend foreclosure proceedings once the initial installment has been received, and to continue to suspend the action as long as [Baunchand kept] to the terms of the Agreement." (*Id.*). "Upon full reinstatement," Wells Fargo would "instruct [its] foreclosure counsel to dismiss foreclosure proceedings." (*Id.*).

The special forbearance agreement accompanied the October 3, 2009 letter. Paragraph 1 of the agreement stated that Baunchand's loan was "due for 33 installments, from February 01, 2007 through October 01, 2009." (*Id.*, at 3). Like the letter, the agreement emphasized that the mortgage

4

loan would not be "contractually current" "[u]pon successful completion of the Agreement" and that "[a]ny outstanding payments and fees [would] be reviewed for a loan modification" at a later date. (*Id.*).  Paragraph 5 of the agreement required Baunchand to make three monthly payments of $1,481.27 by October 1, November 1, and December 1.  The agreement stated that there was "no 'grace period'" and that the payments had to be received "on or before the agreed due date and made strictly in accordance with [paragraph] 5." (*Id.*).  If Wells Fargo did not receive any of the payments "on or before the respective due date," the special forbearance agreement would be "void and the total delinquency, including fees, [would] be due immediately."[2]  (*Id.*).  The agreement further stated that "[t]he lender, in its sole discretion and without further notice to you, may terminate this Agreement.  If the Agreement is terminated, the lender may institute foreclosure proceedings according to the terms of the Note and Security Instrument." (*Id.*).  Baunchand signed the special forbearance agreement on October 18, 2009.  (*Id.*).  The record does not reveal when Wells Fargo received the signed agreement and when or whether Baunchand made the first payment.

On October 6, 2009, Wells Fargo foreclosed on Baunchand's home.[3]  Freddie Mac bought the home at the foreclosure sale.  According to Baunchand's affidavit, she did not find out about the foreclosure sale until December 2009, when she received a letter from Jack O'Boyle & Associates, Freddie Mac's eviction counsel.  (Docket Entry No. 29-3, at 3).  The letter, which was dated October 28, 2009, stated that Freddie Mac bought the home at the foreclosure sale and retained Jack O'Boyle

---

[2]  The special forbearance agreement did not explain how Baunchand could submit the October 1 payment on time given that the letter accompanying the agreement was dated October 3.

[3]  On October 1, a Wells Fargo representative made the following internal note on Baunchand's mortgage account: "Please place file on hold due to loss [mitigation].  Foreclosure is suspended."  (Docket Entry No. 29-12).  There is no explanation in the record for how the foreclosure occurred despite this note.

& Associates "to institute an eviction proceeding to obtain possession of the property." (Docket Entry No. 29-17, at 1).

On January 11, 2010, after Freddie Mac sued to evict Baunchand from her home, she sued Freddie Mac and Wells Fargo in state court to enjoin the eviction proceeding.[4]  The state-court petition also asserted a cause of action for wrongful foreclosure.  The state court issued a temporary restraining order on January 11, enjoining a different Wells Fargo entity—not named as a party in the state-court suit and not served with citation—from evicting Baunchand.  On January 22, 2010, lawyers for Baunchand and Freddie Mac agreed to pass the preliminary injunction hearing.  The parties entered into an agreement under Rule 11 of the Texas Rules of Civil Procedure that Freddie Mac would not proceed with the eviction and that Wells Fargo would not proceed with dispossession from the home, provided that Baunchand paid $1,646.00 each month into the state court's registry beginning on February 15, 2010.  Wells Fargo argues that foreclosure counsel erroneously entered into this agreement without Wells Fargo's approval but does not urge that it is ineffective or unenforceable.  Wells Fargo acknowledged that Baunchand has made monthly payments and that under the Rule 11 agreement, no action can be taken to dispossess her from the property.  On October 14, 2010, Wells Fargo removed the lawsuit to this court.

After this court dismissed the wrongful foreclosure claim and granted Baunchand leave to "amend to attempt to state a cause of action that is viable," (Docket Entry No. 21, at 7), she filed an amended complaint, asserting causes of action for promissory estoppel, breach of contract, fraud, and conversion.  In the first cause of action, Baunchand alleged that Wells Fargo made a promise

---

[4]  Baunchand also named Brian Cormier, the substitute trustee at the foreclosure sale, as a defendant.  She nonsuited Cormier in July 2010.

to enter into a loan modification agreement, that she detrimentally relied on Wells Fargo's promise, and that "the only way to prevent injustice is by enforcing the . . . promise to renegotiate and modify the original loan agreement." (Second Am. Compl. ¶¶ 4.3, 5.2). In the second cause of action, Baunchand alleged that she entered into an oral loan modification agreement with Wells Fargo in July 2009 and that Wells Fargo breached that agreement by foreclosing on her home on October 6, 2009. (*Id.* ¶¶ 4.7–4.8, 6.3, 7.3). Baunchand confirmed in her responses to the defendants' requests for production of documents that this alleged July 2009 loan modification agreement was an oral agreement. (Docket Entry No. 26-3, at 5, 7). In the third cause of action, Baunchand alleged that the defendants committed fraud by misrepresenting that they "would work with her on modifying the original loan agreement" and by telling her that "the prior foreclosure proceedings had been withdrawn." (Second Am. Compl. ¶ 6.4). She further alleged that she detrimentally relied on these statements by continuing to make her monthly mortgage payments and "foregoing steps she could have timely taken . . . to protect her homestead." (*Id.*). In the fourth cause of action, Baunchand alleged that the defendants are liable for conversion because they foreclosed on her home. (*Id.* ¶ 8.3).

The defendants have filed a motion for summary judgment on the breach of contract and promissory estoppel claims and a motion to dismiss the fraud and conversion claims. (Docket Entry No. 26). The motion for summary judgment argues that the breach of contract claim is barred by the statute of frauds and that under Texas law, the promissory estoppel claim fails because it seeks to create and enforce an agreement that had not been prepared at the time the alleged promise was made. (*Id.*, at 12–17). The motion to dismiss argues that the fraud claim was not pleaded with sufficient particularity as required by Rule 9(b) and that the conversion claim fails as a matter of law

7

because Baunchand never lost possession of her home.  (*Id.*, at 17–20).  Baunchand responds that Wells Fargo breached the written October 3, 2009 special forbearance agreement—which was signed by the parties and complied with the statute of frauds—and that promissory estoppel creates an exception to the statute of frauds when a party seeks to use the statute of frauds to perpetrate fraud.  (Docket Entry No. 29, at 15–16).  She also contends that she alleged the "who, what, when, where, and how" of her fraud claim.[5]  The parties's arguments are analyzed in detail below.

## II.      The Motion for Summary Judgment

### A.      The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir.

---

[5]  In response to the motion to dismiss, Baunchand withdrew her conversion claim.  (Docket Entry No. 29, at 23).  The motion to dismiss the conversion claim is granted.

2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B.    The Breach of Contract Claim

In her second amended complaint, Baunchand alleged that she entered into a loan modification agreement with Wells Fargo in July 2009 under the federal government's Home Affordable Modification Program and that Wells Fargo breached the agreement on October 6,  when it foreclosed on her home.  Wells Fargo argues that the breach of contract claim is barred by the

statute of frauds because there is no evidence of a written and signed July 2009 loan modification agreement.

To prevail on a breach of contract claim, the plaintiff must prove the existence of a valid, enforceable contract. *Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir. 1991); *Southwell v. Univ. of the Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex. App.—San Antonio 1998, pet. denied). Under Texas law, "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE § 26.02(b). "Loan agreement" means any promise, agreement, or undertaking "pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money . . . or to otherwise extend credit or make a financial accommodation." *Id.* § 26.02(a)(2). The alleged July 2009 loan modification agreement is a "loan agreement" under § 26.02(a)(2): according to Baunchand, Wells Fargo promised to make a financial accommodation by modifying the terms of the August 2001 fixed-rate promissory note to reduce the monthly payment amount to $1,544.00 instead of $1,646.00. The alleged agreement involves more than $50,000. To be enforceable, the alleged loan modification agreement "must either be in writing and signed by [Wells Fargo], or an exception to the statute of frauds must apply." *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.).

There is no record evidence showing that Baunchand and Wells Fargo entered into a written and signed loan modification agreement in July 2009. The March 30, 2009 letter from Wells Fargo stated that Baunchand may be eligible for loan modification. Similarly, the July 20, 2009 letter stated that loan modification was an option that could become available to her once she submitted

10

an application with supporting documentation.  On July 31, 2009, Baunchand submitted a written application for loan modification or forbearance to Wells Fargo.  Clearly, the parties did not enter into a written loan modification agreement in July 2009.[6]  Baunchand does not claim otherwise.  She has alleged in her complaint—and has confirmed in her response to the defendants' request for production of documents—that the alleged July 2009 loan modification agreement was an oral agreement.  The alleged loan modification agreement is unenforceable under the statute of frauds.  *See Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (holding that a loan officer's promise not to foreclose on the plaintiffs' property until January 2009 to allow the plaintiffs time to refinance or sell their home was unenforceable because the promise was "an oral modification of a loan agreement that was subject to the statute of frauds"); *Gaubert*, 286 S.W.3d at 555–56 (holding that an alleged oral contract to extend a loan for four months was unenforceable under the statute of frauds); *Harris v. Wells Fargo Bank, N.A. (In re Harris)*, No. 10-39586, 2011 WL 2708691, at *3 (Bankr. S.D. Tex. July 11, 2011) (stating that "[a]n oral forbearance agreement is unenforceable under the statute of frauds").

Baunchand's argument that the promissory estoppel exception to the statute of frauds applies is unpersuasive because there is no evidence that Wells Fargo promised to sign an existing written loan modification agreement.  "For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that

---

[6] Nor is there evidence that the parties entered into a written loan modification agreement after July 2009.  In August 2009, Wells Fargo acknowledged that it had received and was reviewing Baunchand's application for loan modification or forbearance.  In October 2009, Wells Fargo offered Baunchand a special forbearance agreement.  The letter accompanying that agreement stated that the forbearance agreement was a "trial period" to assess Baunchand's ability to make regular monthly payments, not a loan modification agreement.  The special forbearance agreement clearly stated that Baunchand would be considered for loan modification upon successful completion of the payment schedule outlined in the forbearance agreement and that if she was approved, Wells Fargo would send her a loan modification agreement.

would satisfy the requirements of the statute of frauds." *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).  "A promise to prepare a written contract is not sufficient. The defendant must have promised to sign a particular agreement which was in writing at the time." *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied).  Viewed in the light most favorable to Baunchand, the summary judgment evidence does not reveal that Wells Fargo promised to sign an existing loan modification agreement. The affidavit Baunchand submitted in opposition to the motion for summary judgment does not mention the existence of a written loan modification agreement.  Wells Fargo's written correspondence clearly indicates that Wells Fargo would consider Baunchand for loan modification, but that no written loan modification agreement was prepared.  The promissory estoppel exception to the statute of frauds does not apply.  *See Ellen*, 2010 WL 4909973, at *6 (holding that the plaintiffs' promissory estoppel claim failed as a matter of law where the defendant promised not to foreclose on the plaintiffs' property before January 2009, but did not promise to sign an existing written agreement); *Gaubert*, 286 S.W.3d at 555 (holding that the promissory estoppel exception to the statute of frauds did not apply where the plaintiff did not testify that "the Bank promised it would sign an existing writing extending the loan for four months; rather, his testimony was there was an oral agreement to extend the loan for four months *from the time when new documents were signed*); *In re Harris*, 2011 WL 2708691, at *5 (holding that the promissory estoppel exception to the statute of frauds did not apply where there was "no evidence that there was a promise by Wells Fargo to sign an existing document").

Baunchand also argues that the October 3, 2009 special forbearance agreement complied with the statute of frauds and that Wells Fargo breached this agreement when it foreclosed on her home on October 6. Baunchand did not plead a cause of action for breach of the October 3, 2009 special forbearance agreement in her second amended complaint. But even if she had, Wells Fargo would be entitled to summary judgment because there is no evidence that the parties had entered into the special forbearance agreement on October 3 or by October 6. Baunchand did not sign the agreement until October 18, 2009. In addition, the October 3, 2009 letter accompanying the special forbearance agreement stated that Wells Fargo would instruct its foreclosure counsel to suspend foreclosure proceedings only if and when it received the first payment required under the proposed agreement. The agreement required a $1,481.27 payment by October 1 and stated that there was "no 'grace period.'" All installments had to "be received on or before the due date and made strictly in accordance" with the payment plan it outlined or the agreement would be void. (Docket Entry No. 29-13, at 3). There is no evidence that Baunchand made the first $1,481.27 payment by October 1, the due date set in the forbearance agreement, or by October 6, the date Wells Fargo foreclosed on her property.

In summary, Baunchand's claim for breach of the alleged July 2009 oral loan modification agreement is barred by the statute of frauds and the promissory estoppel exception does not apply. The claim for breach of the October 3, 2009 special forbearance agreement was never pleaded, and even if it had been, there is no evidence that the parties entered into the forbearance agreement before October 6, the date Wells Fargo foreclosed on the home. The defendants are entitled to summary judgment on the breach of contract claim.

**C.      The Promissory Estoppel Claim**

13

Baunchand's promissory estoppel claim seeks to enforce Wells Fargo's alleged promise to enter into a loan modification agreement. "The elements of a promissory-estoppel claim are (1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; and (4) injustice that can be avoided only by enforcement of the promise." *Ellen*, 2010 WL 4909973, at *4 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005)). "In addition, when promissory estoppel is used to enforce a promise that would be unenforceable because of the statute of frauds, the promise must be a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds." *Id.* (citing *Nagle*, 633 S.W.2d at 800). As discussed above, there is no evidence that Wells Fargo promised Baunchand that it would enter into an existing written loan modification agreement.[7] The defendants' motion for summary judgment is granted as to the promissory estoppel claim.

## III.    The Motion to Dismiss the Fraud Claim

### A.    The Legal Standard under Rule 12(b)(6)

A complaint may be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A

---

[7]   To the extent Baunchand's promissory estoppel claim seeks to enforce the October 3, 2009 special forbearance agreement, there is no evidence that Wells Fargo promised to enter into this agreement at a time when the agreement was in existence. Baunchand's affidavit states that the parties "negotiated a Loan Modification Agreement under the newly enacted Obama Plan in the Spring of 2009." (Docket Entry No. 29-3, at 2). The affidavit does not state that Wells Fargo promised to enter into a special forbearance agreement or that the October 3, 2009 special forbearance agreement was in existence in spring 2009. There is no mention of the special forbearance agreement in the affidavit at all.

14

complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'"; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). However, a

plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

### B.    Analysis

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).   In addition, fraud claims must comply with the particularity requirements of Rule 9(b).   Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   FED. R. CIV. P. 9(b).   "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."   *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (internal quotation marks omitted).   The plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks omitted).

16

"Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." *Id.*

The defendants argue that Baunchand did not plead her fraud claim with the particularity required by Rule 9(b).[8] They argue that the second amended complaint fails to identify the speaker of the alleged fraudulent statements and fails to allege when and where the statements were made and to explain why or how the statements were fraudulent. Baunchand responds by quoting several paragraphs of her complaint that she contends contain sufficient factual detail to satisfy Rule 9(b).

In the "Fraud" section of the complaint, Baunchand identified two statements that form the basis of her fraud claim: she alleged that the defendants misrepresented that they "would work with her on modifying the original loan agreement" and that they told her that "the prior foreclosure proceedings had been withdrawn." (Second Am. Compl. ¶ 6.3). Baunchand alleged that she detrimentally relied on these two statements by continuing to make monthly payments and "foregoing steps she could have timely taken in September and/or October of 2009 to protect her homestead." (*Id.* ¶ 6.4). Baunchand has not sufficiently alleged the "circumstances constituting fraud," FED. R. CIV. P. 9(b), with respect to either of these two statements. The complaint does not identify who misrepresented that the defendants would work with the plaintiff on modifying her

---

[8] A motion to dismiss for failure to plead with the particularity required by Rule 9(b) is properly raised in a Rule 12(b)(6) motion for dismissal for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 n.8 (5th Cir. 2009).

loan[9], when and where this alleged misrepresentation was made, or why this misrepresentation was fraudulent.  The complaint contains more allegations about the second statement—that "the prior foreclosure proceedings had been withdrawn"—but the allegations do not satisfy Rule 9(b). Baunchand alleged that on July 18, 2009, she spoke with Fuad, a Wells Fargo representative whose employee ID number was SKW, and that Fuad told her that the May 2009 foreclosure notice had been canceled.  But she has not alleged that this statement was false, why it was false, and where it was made.  She has also not alleged that Fuad knew that the statement was false or that he made the statement recklessly without regard to its truth.  The defendants' motion to dismiss is granted, with leave to amend no later than January 13, 2012.[10]

## IV.   Conclusion

The defendants' motion for summary judgment is granted.  The breach of contract and promissory estoppel claims are dismissed, with prejudice.  The motion to dismiss the fraud claim

---

[9]  The complaint does identify specific Wells Fargo representatives and statements that these representatives allegedly made, but Baunchand has not alleged that any of those identified misrepresented that Wells Fargo would work with her on modifying her loan.

[10]  It is not clear whether Baunchand is also attempting to state a fraud claim based on alleged statements Wells Fargo made after it foreclosed on her home.  In the "Fraud" section of the complaint, Baunchand alleged that she detrimentally relied on Wells Fargo's statements by continuing to make her monthly payments and by "foregoing steps she could have timely taken in September and/or October of 2009 to protect her homestead." (Second Am. Compl. ¶ 6.4). She seeks "damages sufficient to compensate her for the loss of her property." (Id.).  The reference to "September and/or October 2009" and the damages sought suggest that only pre-foreclosure statements form the basis of the fraud claim. But in the "Facts" section of the complaint, Baunchand alleged that in November 2009, she spoke with David Lnu, a Wells Fargo agent, who told her that Wells Fargo would foreclose on her home in December 2009.  She alleged that once she told this individual that she had entered into a loan modification agreement with Wells Fargo, he told her that she should continue making her monthly mortgage payments and that the foreclosure would not proceed.  According to Baunchand, this individual knew, but failed to tell her, that Wells Fargo had already foreclosed on the property.  She alleges that she relied on his misrepresentation by continuing to make monthly payments after the foreclosure had taken place.  If she amends her complaint, Baunchand may clarify whether she is asserting a fraud claim based on the statements she attributes to David Lnu.  If she is, Baunchand should specify where her conversation took place and when in September 2009 it occurred.

is granted, with leave to amend no later than **January 13, 2012**.  The motion to dismiss the

conversion claim is granted.[11]

       SIGNED on December 14, 2011, at Houston, Texas.

                                    Lee H. Rosenthal
                            United States District Judge

---

[11]  The defendants' Motion to Compel Plaintiff to Make an Election of Remedies, (Docket Entry No. 24), is denied as moot, without prejudice to reurging the motion if Baunchand files an amended complaint.