**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KAREN M. GEORGE-BAUNCHAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-10-3828 |
| | § | |
| WELLS FARGO HOME MORTGAGE, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This memorandum and opinion addresses the following motions:

(1)     the defendants' motion for declaration of relief, (Docket Entry No. 41);

(2)     the defendants' motion for expedited consideration of the motion for declaration of relief, (Docket Entry No. 39);

(3)     the plaintiff's motion for leave to file a third amended complaint, (Docket Entry No. 44); and

(4)     the defendants' motion to strike the proposed third amended complaint, (Docket Entry No. 48).

After carefully considering the motions and responses, the record, and the relevant law, this court:

(1)     grants in part and denies in part the motion for declaration of relief;

(2)     denies the motion for expedited consideration as moot;

(3)     denies the motion for leave to amend to the extent George-Baunchand seeks leave to add new claims and allegations not included in this court's earlier grant of leave to amend the fraud claim; and

(4)     grants the motion to strike to the extent George-Baunchand included in the third amended complaint she filed in response to the grant of leave to amend certain claims and allegations that are futile, and otherwise denies the motion to strike as moot.

Because these rulings dismiss all claims against the defendants and because further amendment after repeated attempts would be futile, final judgment is entered by separate order.  The reasons for these rulings are explained below.

## I.     Background

This is a dispute over a foreclosure on a home mortgage.  The plaintiff-mortgagor, Karen M. George-Baunchand, is a lawyer who had counsel when she filed this suit but who has been representing herself for much of the litigation.  The case has been going on for over two years, first in state, then federal, court.

Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), the assignee and servicer of the mortgage loan on George-Baunchand's home, foreclosed after George-Baunchand defaulted on the note.  The home was sold at foreclosure sale to the Federal Home Loan Mortgage Corporation ("Freddie Mac") in October 2009.  In January 2010, George-Baunchand sued both Wells Fargo and Freddie Mac, alleging wrongful foreclosure and seeking to stop the eviction.

The state court issued a temporary restraining order on January 11, 2010, enjoining a different Wells Fargo entity—not named as a party in the state-court suit and not served with citation—from evicting George-Baunchand from the property.  On January 22, 2010, lawyers for George-Baunchand and for Freddie Mac agreed to pass the preliminary-injunction hearing.  The parties entered into an agreement under Rule 11 of the Texas Rules of Civil Procedure that Freddie Mac and Wells Fargo would not proceed with efforts to evict George-Baunchand on the condition that she pay $1,646.00 each month into the state court's registry, beginning on February 15, 2010. The Rule 11 Agreement stated, in relevant part, as follows:

> Defendants, Federal Home Mortgage and Brian Cormier, Trustee (hereinafter referred to as Wells Fargo) agree not to proceed with the

> Forcible Entry and Detainer suit pending against Plaintiff, Karen George-Baunchand in Cause No. 09-CV-3105976 of Justice Court, Precinct 3, Place One, Fort Bend County, Texas.  Defendant, Wells Fargo agrees not to attempt to dispossess Karen George-Baunchand from her residence located at 20331 Canyon Gate, Katy, Texas 77450.
>
> Both Plaintiff, Karen George-Baunchand and Defendant, Wells Fargo agree to attempt to resolve the accounting differences regarding the mortgage on Plaintiff, Karen George-Baunchand homestead at 20331 Canyon Gate, Katy, Texas 77450 within thirty (30) days.
>
> Pending the resolution of this matter, Plaintiff, Karen George-Baunchand will pay her monthly mortgage payment of $1,646.00 onto the registry of the court on the 15th day of the month beginning February 15, 2010.

(Docket Entry No. 38-2, at 1.)

In the state-court petition, George-Baunchand alleged that the defendants had foreclosed on her home without providing the notices the Texas Property Code requires.  (Docket Entry No. 1-3, at 15.)  After Wells Fargo removed to federal court, the defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Before the court ruled on the motion to dismiss, George-Baunchand filed a first amended complaint.  The first amended complaint asserted causes of action for wrongful foreclosure, fraud, breach of contract, and conversion, and clarified that George-Baunchand's wrongful-foreclosure claim was not only for damages but also to set aside the October 2009 foreclosure sale.  (Docket Entry No. 19, at 9.)  On June 27, 2011, this court granted the defendants' motion to dismiss, with leave to amend.  The court noted that under Texas law, even if a mortgage holder wrongfully forecloses, a mortgagor cannot recover damages on a wrongful-foreclosure claim if she does not lose possession of the home.  (Docket Entry No. 21, at 6.)  Because George-Baunchand still lived in the home, under Texas law, she could not recover damages for wrongful foreclosure.  The court  dismissed that damages claim with prejudice.  (*Id.* at 6–7.)

3

The June 27, 2011 memorandum and opinion did not address whether George-Baunchand stated a viable wrongful-foreclosure claim for equitable rather than monetary relief.  But it is clear that George-Baunchand's claim for equitable relief was not viable as a matter of Texas law.  "Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale." *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).  Because George-Baunchand did not allege in either the original or amended pleading that she had tendered or could tender the full amount due under the promissory note, she did not state a viable wrongful-foreclosure claim that could entitle her to a judgment setting aside the October 2009 foreclosure sale.  *See, e.g., Cruz v. CitiMortgage, Inc.*, No. 3:11–CV–2871–L, 2012 WL 1836095, at *5 (N.D. Tex. May 21, 2012) ("CitiMortgage contends that Plaintiffs are not entitled to have the foreclosure sale set aside because they have not alleged that they have tendered or stand willing to tender the borrowed funds back to the lender.  The court agrees."); *Olaoye v. Wells Fargo Bank, NA*, No. 4:11–CV–772–Y, 2012 WL 1082307, at *3 (N.D. Tex. Apr. 2, 2012) ("Olaoye has not alleged that he tendered the full amount due under the note.  To the contrary, the sum of his allegations implies that he defaulted on the loan.  Accordingly, he cannot obtain equitable relief setting aside the February 2011 foreclosure sale.").

In July 2011, George-Baunchand filed a second amended complaint.  That complaint asserted causes of action for breach of contract, promissory estoppel, fraud, and conversion.  The defendants moved for summary judgment under Rule 56 on the breach of contract and promissory-estoppel claims and moved to dismiss the fraud and conversion claims under Rule 12(b)(6).  On December 14, 2011, this court granted the defendants' motion for summary judgment and granted the motion

to dismiss the second amended complaint, with prejudice, as to all claims except the fraud claim.

That claim was dismissed with leave to amend.  The December 14, 2011 memorandum and order

did not grant leave to amend to add new causes of action.

In the "Fraud" section of the second amended complaint, George-Baunchand identified two

statements as the basis of her fraud claim: she alleged that the defendants misrepresented that they

"would work with her on modifying the original loan agreement"; and she alleged that the

defendants said that "the prior foreclosure proceedings had been withdrawn."  (Second Am. Compl.

¶ 6.3.)  George-Baunchand alleged that she detrimentally relied on these two statements by

continuing to make monthly payments on her mortgage loan and by "foregoing steps she could have

timely taken in September and/or October of 2009 to protect her homestead."  (*Id.* ¶ 6.4.)

Dismissing the fraud claim as pleaded, this court explained:

> George-Baunchand has not sufficiently alleged the "circumstances
> constituting fraud," FED. R. CIV. P. 9(b), with respect to either of
> these two statements.  The complaint does not identify who
> misrepresented that the defendants would work with the plaintiff on
> modifying her loan, when and where this alleged misrepresentation
> was made, or why this misrepresentation was fraudulent.  The
> complaint contains more allegations about the second
> statement—that "the prior foreclosure proceedings had been
> withdrawn"—but the allegations do not satisfy Rule 9(b).  George-
> Baunchand alleged that on July 18, 2009, she spoke with Fuad, a
> Wells Fargo representative whose employee ID number was SKW,
> and that Fuad told her that the May 2009 foreclosure notice had been
> canceled.  But she has not alleged that this statement was false, why
> it was false, and where it was made.  She has also not alleged that
> Fuad knew that the statement was false or that he made the statement
> recklessly without regard to its truth.

(Docket Entry No. 37, at 17–18.)  The court further explained:

> It is not clear whether George-Baunchand is also attempting to state
> a fraud claim based on alleged statements Wells Fargo made after it
> foreclosed on her home.  In the "Fraud" section of the complaint,

> George-Baunchand alleged that she detrimentally relied on Wells
> Fargo's statements by continuing to make her monthly payments and
> by "foregoing steps she could have timely taken in September and/or
> October of 2009 to protect her homestead." (Second Am. Compl. ¶
> 6.4). She seeks "damages sufficient to compensate her for the loss of
> her property." (*Id.*). The reference to "September and/or October
> 2009" and the damages sought suggest that only pre-foreclosure
> statements form the basis of the fraud claim. But in the "Facts"
> section of the complaint, George-Baunchand alleged that in
> November 2009, she spoke with David Lnu, a Wells Fargo agent,
> who told her that Wells Fargo would foreclose on her home in
> December 2009. She alleged that once she told this individual that
> she had entered into a loan modification agreement with Wells Fargo,
> he told her that she should continue making her monthly mortgage
> payments and that the foreclosure would not proceed. According to
> George-Baunchand, this individual knew, but failed to tell her, that
> Wells Fargo had already foreclosed on the property. She alleges that
> she relied on his misrepresentation by continuing to make monthly
> payments after the foreclosure had taken place. If she amends her
> complaint, George-Baunchand may clarify whether she is asserting
> a fraud claim based on the statements she attributes to David Lnu. If
> she is, George-Baunchand should specify where her conversation
> took place and when in September 2009 it occurred.

(*Id.* at 18.)

In January 2012, George-Baunchand filed a third amended complaint. She did not attempt

to cure the pleading deficiencies of the previously asserted fraud claim. Instead, she alleged for the

first time that Wells Fargo "converted" and "stole" her mortgage payments. The third amended

complaint alleged:

> 4.2   Over the years, Plaintiff fell behind on monthly payments due
> to a series of medical problems and more importantly, due to fraud,
> and theft, on the part of Defendant Wells Fargo. Over the entire
> course of the loan relationship, Defendant Wells Fargo repeatedly
> accepted cash payments from Plaintiff in various amounts then,
> Defendant Wells Fargo would refuse to post the cash payments.
> Rather than post the cash payments, Defendant Wells Fargo kept the
> cash funds, converting the money to themselves, and posted a
> reversal of the funds or NSF/bounced checks. Defendant Wells
> Fargo committed these criminal acts on numerous occasions, stealing

more than $30,000 from Plaintiff in violation of the Texas Penal Code and the Uniform Commercial Code ("UCC"). . . .

4.3   Defendant Wells Fargo charged Plaintiff returned check fees for the alleged NSF/bounced checks that were actually cash payments. One such fraudulent act occurred when Plaintiff's family member paid Defendant Wells Fargo cash money in the amount of $12,860.00 toward her loan in order to pay in advance to cover Plaintiff's payments during times of illness.  Defendant Wells Fargo took that cash payment and reversed it as an NSF/bounced check.  Moreover, Plaintiff never received any of those fraudulently converted cash funds back. . . .

4.4   Additionally, Defendant Wells Fargo took numerous mortgage payments made by Plaintiff and placed them in a suspense account for months and even years in order to show that Plaintiff had not made her payments in a timely manner.  One such incident occurred in April of 2005, when Defendant Wells Fargo placed more than $5,557.37 in a suspense account rather than allow those funds, which Plaintiff paid toward her mortgage, to be used for that purpose.  In September of 2006, Plaintiff requested an investigation into the fraudulent activity.  On September 28, 2006, Defendant Wells Fargo responded in writing that they were 'continuing to investigate [Plaintiff's] inquiry,' which they never did.

(Third Am. Compl. ¶¶ 4.2–4.4.)

Based on these allegations, George-Baunchand asserted a new fraud claim and new causes of action for conversion and theft.  She also reasserted the wrongful-foreclosure claim that this court had dismissed in the June 27, 2011 memorandum and opinion.  In addition to realleging that the defendants foreclosed without providing the notices the Texas Property Code requires, George-Baunchand alleged that the defendants had in fact evicted her from her home.  She alleged that she sought "to recover damages for [her] wrongful dispossession . . . from her property."  (*Id.* ¶ 1.1.) George-Baunchand made similar allegations in a response she filed the day after filing the third amended complaint.  In that response to the defendants' motion seeking a declaration of relief, George-Baunchand alleged that Wells Fargo and Freddie Mac had "ousted [her] from the home on

or about January 12, 2012" and "dispossessed [her] of the property located at 20331 Canyon Gate Blvd., Katy, Texas."  (Docket Entry No. 45, at 2.)

These allegations were new.  If true, they meant that the defendants had violated the Rule 11 Agreement by evicting and "dispossessing" George-Baunchand from the property.  Wells Fargo and Freddie Mac denied that they had done so and instead alleged that it was George-Baunchand who had violated the Rule 11 Agreement by failing to timely deposit monthly payments into the state-court registry.  George-Baunchand admitted that she had failed to deposit the December 15, 2011 payment in the state-court registry on time, but she argued that Wells Fargo had breached the Rule 11 Agreement first, excusing her obligation to comply.  This court held an evidentiary hearing to resolve this dispute over the Rule 11 Agreement.  At the evidentiary hearing, George-Baunchand did not provide credible evidence that she had been evicted or dispossessed.  To the contrary, as she admitted on the record and as her own witnesses testified, as of April 10, 2012, she and family members continued to live in the home and have done so throughout this litigation.

At the evidentiary hearing, the court also allowed George-Baunchand to present evidence on the new allegations of the proposed third amended complaint—that Wells Fargo "stole" and "converted" her mortgage payments.  George-Baunchand presented no evidence to support these allegations.  She raised questions about how the payment-history records credited her payments of some of the monthly mortgage installments.  A Wells Fargo witness explained the payment history for the mortgage loan and how George-Baunchand's mortgage payments were applied to the note.  This court considered this evidence in ruling on the motions relating to the Rule 11 Agreement, but did not consider this evidence in assessing the sufficiency of the third amended complaint.  As explained below, the evidence the parties presented on the new allegations and claims asserted in

8

that pleading — that Wells Fargo converted and stole George-Baunchand's mortgage payments —

plays no role in this court's decision to deny leave to amend to assert those claims and allegations.

## II.     The Motion to Strike and the Motion for Leave to Amend

Wells Fargo and Freddie Mac have moved to strike George-Baunchand's third amended

complaint and oppose the motion for leave to file that complaint.  Wells Fargo and Freddie Mac

argue that the third amended complaint should be struck because the reasserted fraud claim is still

deficient under Rule 9(b) and because this court did not grant George-Baunchand leave to amend

to assert a different, new fraud claim based on new factual allegations or other new causes of action.

(Docket Entry No. 48, at 3–6.)  George-Baunchand responds that she reasserted her wrongful

foreclosure claim but gave "additional facts."  (Docket Entry No. 66, at 2.)  George-Baunchand also

responds that her fraudulent conversion and theft claims are not new but instead "are within the

scope of a claim for fraud."  (*Id.* at 4.)  She argues that she "did not allege any new claims but

expounded on the fraud claim to allege claims which her attorney should have but failed to assert

on her behalf in her original pleading."  (*Id.*)

In dismissing the second amended complaint, this court granted George-Baunchand leave

to amend her fraud claim to cure the deficiencies the court identified in its ruling.  The court did not

grant George-Baunchand leave to amend to assert entirely new claims.  George-Baunchand's

allegations that Wells Fargo "converted" and "stole" her mortgage payments and the fraud,

conversion, and theft claims based on these allegations go beyond the amendment this court's ruling

permitted.  The factual allegations that Wells Fargo converted and stole George-Baunchand's

mortgage payments by failing to record her cash payments but instead showing them as returned

checks or by placing them in a suspense account are new.  George-Baunchand has not shown good

cause for failing to plead these factual allegations in her three prior pleadings or for failing to identify the fraud, conversion and theft claims based on them. These new allegations and claims are not based on new facts learned during discovery. To the contrary, George-Baunchand admits that she had the information about the "stolen" and "converted" payments when she first filed her state-court petition. At that time, she was represented by counsel. She admits that she could have asserted these allegations and claims in the original state-court petition. She blames her counsel for not doing so.

George-Baunchand has filed three prior complaints with the benefit of two attorneys. She is an attorney herself. There is no basis in the record for allowing George-Baunchand to assert new claims at this late stage in the litigation based on facts she could have alleged when she filed the suit. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir. 2003) (holding that a party filing a motion for leave to amend after the deadline set in the scheduling order must meet Rule 16(b)'s good cause standard); *Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 263 (5th Cir.1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion for leave to amend a complaint to include a new claim based on the same facts that formed the basis of the plaintiff's earlier claims); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) (denying leave to amend under Rule 16(b) to assert new claims based on facts the plaintiff knew when he filed the first complaint); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340–41 (2d Cir. 2000) (same). To the extent George-Baunchand asserts new claims for fraud, fraudulent conversion, and theft based on new allegations that Wells Fargo reversed mortgage payments that George-Baunchand made in cash or placed them in a suspense account, these claims are not included

in this court's earlier grant of leave to amend.[1]  The defendants' motion to strike these claims is granted.

The motion for leave to amend to assert a wrongful-foreclosure claim is also denied.  This court did not grant George-Baunchand leave to amend to reassert the previously dismissed wrongful-foreclosure claim.  That claim was dismissed with prejudice.  To the extent George-Baunchand argues that she may reassert her wrongful-foreclosure claim because of her "wrongful dispossession . . . from her property," (Third. Am. Compl. ¶ 1.1), the argument fails because she still lives in the home.  Allowing George-Baunchand to reassert her wrongful-foreclosure claim would be futile for the same reasons her prior wrongful-foreclosure claim failed.  George-Baunchand cannot recover damages for wrongful foreclosure because she never lost possession of the home and she cannot set aside the October 2009 foreclosure sale because she never alleged that she tendered or is willing or able to tender to Wells Fargo the amount due under the promissory note.  The court denies George-Baunchand's motion for leave to amend to reassert her wrongful-foreclosure claim.  The defendants' motion to strike this claim is moot.

The court did grant George-Baunchand leave to amend to reassert, with additional factual detail, the fraud claim previously asserted in the second amended complaint.  George-Baunchand's proposed third amended complaint does not address the pleading deficiencies this court identified when it granted the motion to dismiss the second amended complaint.  George-Baunchand's reasserted fraud claim fails for the same reasons discussed in this court's December 14, 2011 memorandum and order.  Granting George-Baunchand leave to amend to reassert the previously

_____

[1] The evidence the parties presented at the evidentiary hearing on the allegations that Wells Fargo stole George-Baunchand's mortgage payments play no role in this holding.  It is worth noting, however, that no injustice will result from denying George-Baunchand leave to amend to assert the new claims.  George-Baunchand presented no support for her allegations that Wells Fargo "stole" her mortgage payments.

dismissed fraud claim would be futile.  The motion for leave to amend is denied.  The defendants'

motion to strike is moot.

### III.    The Motion for Declaration of Relief and the Motion for Expedited Consideration

The Rule 11 Agreement required George-Baunchand to "pay her monthly mortgage payment

of $1,646.00 onto the registry of the court on the 15th day of the month beginning February 15,

2010" "[p]ending the resolution of this matter."  (Docket Entry No. 38-2, at 1.)  Wells Fargo and

Freddie Mac claim that George-Baunchand breached the Rule 11 Agreement by failing to make the

December 15, 2011 payment on time.  Wells Fargo and Freddie Mac ask this court to: (1) declare

that George-Baunchand breached the Rule 11 Agreement; (2) declare that the state-court temporary

restraining order has expired by operation of state law; (3) declare that Wells Fargo and Freddie Mac

may pursue state-law remedies against George Baunchand including eviction and forcible entry and

detainer; and (4) order the release of funds held in the state court's registry to Wells Fargo without

further delay.  (Docket Entry No. 41, at 5.)  Wells Fargo and Freddie Mac also seek attorney's fees

for responding to a motion George-Baunchand filed in state court.  According to Wells Fargo and

Freddie Mac, the motion sought the release of the funds held in the state court's registry to George-

Baunchand.  (*Id.* at 3, 5.)

George-Baunchand admits that she did not make the December 15, 2011 payment until

December 26.  (Docket Entry No. 45, at 3.)  She argues that the defendants breached the Rule 11

Agreement "from the on-set by failing to make any attempts to modify" her mortgage loan.  (*Id.* at

2.)  She asks this court to "sanction Defendants for violating the Rule 11 Agreement in its entirety"

and promptly release all funds in the state court's registry to her.  (*Id.* at 3.)

### A.    Whether George-Baunchand Breached the Rule 11 Agreement and Whether Any Such Breach is Excused

Wells Fargo and Freddie Mac argue that George-Baunchand breached the Rule 11 Agreement by failing to make the December 15, 2011 payment on time. George-Baunchand admits she made that payment late. She argues that the defendants breached the Rule 11 Agreement first because they did not make any attempts to modify her mortgage loan.

The record does not support the argument that the defendants breached the Rule 11 Agreement by failing to make any attempts to modify George-Baunchand's mortgage loan. George-Baunchand has not submitted any evidence that the defendants failed to make any such attempts or that the Rule 11 Agreement obligated them to do so. The Rule 11 Agreement states that the defendants "agree to attempt to resolve the accounting differences" over George-Baunchand's mortgage loan. (Docket Entry No. 38-2, at 1.) The Agreement does not obligate Wells Fargo to modify or to attempt to modify the mortgage loan. George-Baunchand has neither alleged nor submitted evidence that the defendants failed to attempt to resolve the "accounting differences" over her loan.

Wells Fargo and Freddie Mac seek a declaration that George-Baunchand breached the Rule 11 Agreement so that they may pursue state-law remedies, including eviction and forcible entry and detainer. Under the Rule 11 Agreement, the defendants agreed not to evict George-Baunchand so long as she paid $1,646.00 monthly into the registry of the state court. The Rule 11 Agreement obligated George-Baunchand to make the monthly payments "[p]ending the resolution of this matter." (Docket Entry No. 38-2, at 1.) The Rule 11 Agreement expires when this litigation is resolved. Because this court enters final judgment concurrently with filing this memorandum and opinion, the Rule 11 Agreement is no longer in effect. The Rule 11 Agreement cannot prevent the defendants from pursuing their remedies, including eviction and forcible entry and detainer. The

defendants' request for a declaration that George-Baunchand breached the Rule 11 Agreement is moot because the Agreement is no longer in effect.

### B.   Whether the State-Court TRO Has Expired

The state court issued a temporary restraining order on January 11, 2010, enjoining a different Wells Fargo entity—not named as a party to this suit—from taking any action to evict George-Baunchand from the home.  The defendants seek a declaration that the state-court temporary restraining order has expired by operation of state law.  This court previously held that the TRO "expired under state law on January 25, 2010."  (Docket Entry No. 21, at 3.)  The defendants' request for another declaration that the state-court TRO has expired is denied as moot.

### C.   Whether the Defendants May Pursue State-Law Remedies

Wells Fargo and Freddie Mac ask this court to declare that they may pursue state-law remedies against George-Baunchand, including eviction and forcible entry and detainer.  The request is granted in part and denied in part.  The Rule 11 Agreement no longer prevents the defendants from pursuing the state-law remedies they have identified.  To the extent the defendants seek a broader declaration of their rights—that *nothing* prevents them from pursuing eviction and forcible entry and detainer against George-Baunchand under Texas law—the request is denied.  Such a sweeping declaration is unnecessary to resolve this litigation and would amount to an advisory opinion.

### D.   The Release of Funds from the State Court's Registry to Wells Fargo

The defendants ask this court to order that the funds held in the state court's registry be released to Wells Fargo as rent payments for George-Baunchand's continued residence in the home during this litigation.  George-Baunchand opposes this request, arguing that the defendants "falsely

14

stated that the funds . . . were for the sole purpose of Plaintiff paying rent to Defendants." (Docket Entry No. 45, at 2.) According to George-Baunchand, "[t]he funds in the Court's Registry were to pay the mortgage payment of $1,646.00 under the guise that the mortgage would remain in Plaintiff's name and that Plaintiff would be able to remain in her home. However, the Defendants removed Plaintiff's name from the Deed in February 2010, and ousted Plaintiff from her home on or about January 12, 2012." (*Id.*)

Under the Rule 11 Agreement, George-Baunchand agreed to pay "her monthly mortgage payment of $1,646.00" into the state court's registry "[p]ending the resolution of this matter." (Docket Entry No. 38-2, at 1.) The defendants agreed not to evict or "attempt to dispossess" George-Baunchand from the home and "to attempt to resolve the accounting differences" related to the mortgage loan. (*Id.*) The court concludes that the funds in the state court's registry are owed to Wells Fargo because George-Baunchand has lived in the home since she filed suit and still lives there. The record does not reveal a basis for withholding the release of the funds to Wells Fargo. The funds are held in the state-court registry related to the case of *Karen M. George-Baunchand v. Federal Home Loan Mortgage Corporation*, Case No. 10-DCV-177684, in the 434th Judicial District Court of Fort Bend County, Texas.

### E.    The Request for Attorney's Fees

According to Wells Fargo and Freddie Mac, on December 21, 2011, George-Baunchand "filed a Motion to Remove Funds and Interest from the Court Registry" in the state court from which this action was removed. (Docket Entry No. 41, at 3.) Wells Fargo and Freddie Mac state that they "conferred" with George-Baunchand "regarding the filing of her state court Motion" but that "[d]espite the inappropriate filing, . . . Plaintiff will not agree to withdraw the Motion filed in state

15

court." (*Id.* at 4.)  Because George Baunchand refused to withdraw her state-court motion, the defendants "seek recovery of [their] reasonable attorneys' fees incurred in responding to and defending against [it]." ( *Id.* at 4–5.)

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses.  Indeed, this principle is so firmly entrenched that it is known as the 'American Rule.'" *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011).  As the parties seeking to recover attorney's fees, Wells Fargo and Freddie Mac bear the burden of establishing that an exception to the "American Rule" applies.  Wells Fargo and Freddie Mac have not identified a legal basis for departing from the "American Rule."  Wells Fargo and Freddie Mac also bear the burden of proving that the requested attorney's fees are reasonable.  To satisfy this burden, Wells Fargo and Freddie Mac "must submit evidence supporting the hours worked and rates claimed." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citation and internal quotation marks omitted).  Wells Fargo and Freddie Mac have not submitted evidence supporting their attorney's fees request.  They have also not identified the amount sought.  The request for attorney's fees is denied.

### F. The Motion for Expedited Consideration

Based on the above rulings, the motion to expedite consideration of the motion for declaration of relief, (Docket Entry No. 39), is moot.

## IV. Conclusion

For the reasons discussed above, this court grants in part and denies in part the motion for declaration of relief; denies as moot the motion for expedited consideration; denies the motion for

leave to amend; and grants the motion to strike in part and otherwise denies it as moot.  Final

judgment in the defendants' favor is entered by separate order.

SIGNED on June 11, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge